KING v. UNITED STATES.

No. 7106.

United States Court of Appeals for the District of Columbia.

Decided May 16, 1938.

James J. Laughlin, of Washington, D. C., for appellant.

David A. Pine, George E. McNeil, and Allen J. Krouse, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal from a sentence of three to fifteen months imprisonment, imposed in the District Court, for violation of the Liquor Taxing Act of 1934, 48 Stat. 317, § 207, 26 U.S.C.A. § 1152g. Appellant was first sentenced on April 23, 1937 to a term of one to two years. That sentence was "void" because it did not include the words "at hard labor," which occur in the statute under which it was imposed. Harman v. United States, C.C., 50 F. 921. Cf. Ex parte Karstendick, 93 U.S. 396, 399, 23 L.Ed. 889; Egan v. United States, 52 App. D.C. 384, 397, 287 F. 958: De Benque v. United States, 66 App.D.C. 36, 85 F.2d 202, 106 A.L.R. 839. On January 18, 1938, after he had served nearly nine months under the void sentence, he was released on habeas corpus, and on January 28, 1938, he was given, in respect of the same conviction, the new sentence of three to fifteen months at hard labor of which he now complains. He concedes that a valid sentence may be substituted for an invalid one at a later term of court. De Benque v. United States, supra. But he contends that the new sentence (1) increased his punishment and (2) is for that reason invalid.

(1) Has appellant's punishment been increased? "Indeterminate sentences have long been held sentences for the maximum term for which the defendant might be imprisoned." United States ex rel. Paladino v. Commissioner of Immigration, 2 Cir., 43 F.2d 821, 822; De Benque v. United States, 66 App.D.C. 36, 85 F.2d 202, 106 A.L.R. 839; Story v. Rives, 1938, 68 App.D.C. 325, 97 F.2d 182. This is because earlier freedom on parole is neither absolute nor, under the Federal statutes, a matter of right. De Benque v. United States, supra. But a good conduct or "good-time" allowance, when earned, is a matter of right. Story v. Rives, supra; 18 Stat. 479, amended by 32 Stat. 397, 18 U.S.C.A. §§ 710–713. Unless it appears that a prisoner's conduct has forfeited good-time allowances, they must be deducted before the comparative severity of sentences can be determined. This was assumed, though not decided, in De Benque v. United States, supra. It is true that prisoners released for good conduct are subjected to the same treatment, during the remainder of their terms, as prisoners released on parole. 47 Stat. 381, § 4, 18 U.S.C.A. § 716b. For any conduct which would be a violation of parole, they may be rearrested and required to serve out their maximum terms. Story v. Rives, supra. But it cannot be assumed that such conduct will occur. Unless it occurs they are nearly as free as other people, and vastly freer than before their release. If two sentences are of equal nominal length, but the first involves more "good-time" liberty while the second involves more actual imprisonment, clearly the second is the more severe. Duration is not the only measure of severity. Where a rule against increase of sentence applies, the court may not "increase the penalty;" the "punishment" must not be "augmented." United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354.

The original sentence was for a maximum of two years; and the nine months which appellant served under it, together with the fifteen month maximum of the second sentence, come to just two years. But, in the absence of misconduct on his part, his good-time allowance of six days per month (18 U.S.C.A. § 710) would have been calculated on the basis of his two year sentence, if that sentence had been allowed to stand, and will now be calculated on the basis of his fifteen month sentence. The resentence has deprived him of his good-time allowance in respect of the nine months which he served under the old sentence.[1] His imprisonment, then, has been increased. Independently of this, his punishment has been increased in that his original sentence did not, and his present sentence does, involve hard labor.

The Government's brief suggests, in the vein of The Mikado, that because the first sentence was void appellant "has served no sentence but has merely spent time in the penitentiary;" that since he should not have good conduct while he was undergoing the burglary sentence; or that bad conduct under the burglary sentence will bar him from earning good-time under the forgery sentence. His good-time rights under his new sentence are wholly independent of his past record. A fortiori this is true when, as in the case of the present appellant, the former sentence was not only at an end before the new sentence was imposed but was also "void"—i. e. not entitled to legal effect. Moreover, 18 U.S.C.A. § 709a provides: "The sentence of imprisonment * * * shall commence to run from the date on which such person is received at the penitentiary. * * * No sentence shall prescribe any other method of computing the term." If the prisoner were to be given good-time credit for the nine months which he served before the commencement of his present sentence, the spirit if not the letter of this rule would be violated.

---

[1] It is impossible to interpret the statute, 18 U.S.C.A. § 710, so broadly as to entitle a prisoner to claim or earn, as a deduction from a valid resentence, a good-time allowance in respect of time previously served under a void sentence. The provision at the end of that section, that "When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated," clearly refers to two sentences which are in existence at the same time. When a prisoner has two such sentences, or at least when he has two consecutive sentences which were imposed at one time, good-time allowance for the aggregate of both is calculated, and stands or falls, as a unit. Ebeling v. Biddle, 8 Cir., 291 F. 567; Morgan v. Aderhold, 5 Cir., 73 F.2d 171. But it is impossible to suppose that a man who serves a sentence for burglary, and is afterwards sentenced for forgery, can claim early discharge under his forgery sentence in respect of

been imprisoned as he was, he was not imprisoned at all. The brief deduces the corollary that his non-existent punishment cannot possibly be "increased." As other corollaries it might be suggested that he is liable in quasi-contract for the value of his board and lodging, and criminally liable for obtaining them by false pretenses. We cannot take this optimistic view. Though appellant's first sentence was "void," he was threatened with and suffered imprisonment under it. His second sentence, from which he now appeals, increases his punishment both in length and in kind beyond that which he faced under the first. The increase in kind was necessary if the sentence was to be brought within the statute; but the increase in length was not.

(2) As his punishment has been increased, we are confronted with the question whether the increase is lawful. The answer, we think, is in Murphy v. Massachusetts, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711. In that case, the prisoner had been convicted of embezzlement and first sentenced, under an indeterminate-sentence law passed after the crime was committed, to not less than ten nor more than fifteen years imprisonment, including one day of solitary confinement. After he had served slightly more than two years and seven months, including a day of solitary confinement, the Massachusetts Supreme Court reversed that sentence, on the ground that the indeterminate-sentence law was unconstitutional as applied to past offenses. He was resentenced to a fixed term of slightly less than nine years and eleven months, the first day to be in solitary confinement. The trial judge, when he resentenced the prisoner, offered to omit all solitary confinement, if the prisoner would waive that requirement of the statute, but he refused to do so. He carried his new sentence to the Massachusetts Supreme Court and then to the United States Supreme Court on writs of error. In the United States Supreme Court he was represented by Ezra Ripley Thayer, afterwards Dean of the Harvard Law School; and Mr. Brandeis, now Mr. Justice Brandeis, was on the brief. They argued that the new sentence put the prisoner twice in jeopardy, and that this double jeopardy abridged his privileges and immunities as a citizen of the United States and deprived him of his liberty without due process of law. The Court affirmed the sentence. It held that no double jeopardy or deprivation of due process was involved; therefore, it said, "we need not be curious in explanation of the particular ground of our exercise of jurisdiction." 177 U.S. 155, 157, 20 S.Ct. 639. It characterized the original sentence as "not void, but voidable" (page 160, 20 S.Ct. 641); yet it declared that the second sentence was not invalid because it "might turn out to be for a longer period of imprisonment" (page 160; cf. page 161, 20 S.Ct. page 641). It considered the additional day of solitary confinement, and held that it did not invalidate the new sentence. It held broadly that "the plea of former jeopardy or of former conviction cannot be maintained because of service of part of a sentence reversed or vacated on the prisoner's own application." 177 U.S. at page 162, 20 S.Ct. at page 642.

In the earlier case of Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872, a statute authorized imprisonment for not more than one year *or* a fine. A man was sentenced to one year's imprisonment *and* a fine. After he had paid the fine and served five days imprisonment, he sought relief through a writ of habeas corpus. The trial court vacated the sentence and imposed a new sentence of one year's imprisonment. The Supreme Court held the second sentence invalid, on the principle of the provision in the Fifth Amendment, U.S.C.A. Const. Amend. 5 that no person shall be subject for the same offence to be twice put in jeopardy of life or limb. It said: " * * * if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? * * * We do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." 18 Wall. 163, 173. In Murphy v. Massachusetts, supra, the court distinguished Ex parte Lange on the ground that there the erroneous sentence had been "executed by full satisfaction of one of the alternative penalties of the law,"[2] while in the Murphy

---

2 Similarly, in United States v. Benz, 282 U.S. 304, 310, 51 S.Ct. 113, 115, 75 L.Ed. 354, the Court approved a statement that the Lange Case "merely holds that new sentence of imprisonment alone cannot be imposed after payment of the

Case, the original sentence had not been fully satisfied; and also that "here an erroneous judgment was vacated on the application of the accused * * *. This is not a case in which the court undertook to impose in invitum a second or additional sentence * * *." 177 U.S. at page 160, 20 S.Ct. at page 641. The petition for certiorari and the brief for the petitioner in the Lange Case show that there the lower court, instead of taking the normal course of discharging the unlawfully-held prisoner on the return of the writ of habeas corpus preliminary to resentencing him, *dismissed* the writ and then, on its own motion, proceeded to vacate the original sentence and pronounce the new sentence. No such fact appears here.

We think the Murphy Case governs this one. We think it can make no difference that here the prisoner's successful attack on his first sentence was by habeas corpus proceedings, while in the Murphy Case it was by writ of error. This was held in Bryant v. United States, 8 Cir., 214 F. 51, 130 C.C.A. 491. There the statute under which appellant was convicted required both a fine and imprisonment at hard labor. Appellant's first sentence was to simple imprisonment, with no fine and no hard labor. He obtained his release on habeas corpus, and was thereupon sentenced to hard labor and to pay a fine of $1. The corrected sentence was affirmed by the Circuit Court of Appeals for the Eighth Circuit. That court said: "It is well settled that it is not double jeopardy to resentence a prisoner who had his first sentence vacated by writ of error (Murphy v. Massachusetts, 177 U. S. 155, 20 S.Ct. 639, 44 L.Ed. 711), nor to retry him on a new indictment after a prior indictment, conviction, and sentence have been set aside in a proceeding in error (Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300). The principle of such cases is that a sentence that has been vacated by the action of a prisoner cannot then be put up by him as an obstacle to the further administration of justice; and we think it immaterial that his attack was collateral, as by habeas corpus, instead of direct, by appeal or writ of error. Here

he was the actor, and the result left his conviction unimpaired." 214 F. at page 53.

In United States v. Benz, 282 U. S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354, which decided that a *valid* sentence may be *reduced* at the same term of court, there are unqualified dicta to the effect that punishment may not be "augmented" or "increased." We think these dicta should be read as restricted to cases in which, as in the case with which the Court was dealing, the prior sentence was valid. Buhler v. Hill, D.C., 7 F.Supp. 857, which applied them to a case in which the prior sentence was void, seems to us erroneous. It cannot be assumed that the Court intended by dicta in the Benz Case to overrule its decision in Murphy v. Massachusetts. We think the law remains as the Murphy Case established it, that when a void, or merely voidable, sentence has been vacated as a result of the prisoner's own demands, he cannot complain if his second sentence increases his punishment.[3]

Until a convicted prisoner receives a sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption, and that he is therefore not put in jeopardy a second time when he receives his first valid sentence. Moreover, when he himself attacks the first sentence his later jeopardy is, in some sense, of his own choosing. A close parallel is the doctrine that when a *conviction* is reversed, the prisoner cannot complain if on a later conviction he is given a severer sentence. If a conviction and sentence to life imprisonment are reversed because of errors in a trial for murder, the prisoner may, on a subsequent conviction, be sentenced to death. Stroud v. United States, 251 U.S. 15, 18, 40 S.Ct. 50, 64 L. Ed. 103. The Court said in that case (page 51): "The plaintiff in error himself invoked the action of the court which resulted in a further trial. In such cases he is not placed in second jeopardy within the meaning of the Constitution." It can make no difference whether the error which avoids the first sentence goes to the conviction, as it did there, or to the sentence alone, as it does here.

---

fine, which operated as a satisfaction of the prior judgment."

[3] This is by no means to say that punishment inflicted under a void sentence may be ignored in determining whether a resentence subjects the prisoner to more punishment than the legal maximum for his offense. Cf. Jackson v. Commonwealth, 187 Ky. 760, 220 S.W. 1045, 9 A.L.R. 955.

If appellant's original sentence had been lawful, it could not lawfully have been increased after he commenced to serve it. Benz v. United States, supra; Blackman v. United States, 5 Cir., 250 F. 449; People v. Meservey and Smith, 76 Mich. 223, 42 N.W. 1133; cf. Simmons v. United States, 5 Cir., 1937, 89 F.2d 591, certiorari denied 58 S.Ct. 19, 82 L.Ed. ——; notes, 40 L.R.A.,N.S., 90, 44 A.L.R. 1203. It may be argued, first, that he should not be penalized because it was unlawful; and second, that future prisoners who may be sentenced *unlawfully should not be deterred from protest by fear of increased severity.* There is force in these considerations: but as arguments for exercising judicial discretion in the prisoner's favor they must be addressed to the trial court, and as arguments for a rule of law in his favor they must be addressed to the Supreme Court or to Congress. Moreover, in this case any authorized sentence is in one aspect more burdensome ·than the original unauthorized sentence, for the statute required hard labor and the first sentence was without hard labor. If the "punishment" could not be "augmented," no valid sentence could afterwards be imposed. Sentencing should not be a game in which a wrong move by the judge means immunity for the prisoner. It is established that a sentence which has not been fully served, and no separable part of which has been fully served, and which is void because·it imposes less than the statutory minimum, may be corrected to conform to the statute. Murphy v. Massachusetts, supra; Bryant v. United States, 8 Cir., 214 F. 51, 130 C.C.A. 491; Logan's Case, 5 Grat., Va., 692; People ex rel. Friedman v. Hayes, 172 App.Div. 442, 158 N.Y. S. 949; United States v. Harman, D.C., 68 F. 472; cf. Smithey v. State, 93 Miss. 257, 46 So. 410. Some cases contra proceed on the theory that the first sentence was "erroneous" and not "void." Hickman v. Fenton, 120 Neb. 66, 231 N.W. 510; In re Johnson, C.C., 46 F. 477. " 'The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.' " In re Bonner, 151 U.S. 242, 260, 14 S.Ct. 323, 327, 38 L.Ed. 149. A rule might be adopted which would permit a sentence to be increased only so far as necessary to bring it into conformity with the statute. But this court cannot adopt such a rule, for it would limit Murphy v. Massachusetts.

Appellant's remaining assignments of error do not, in our opinion, require discussion.

Affirmed.